**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| ALEH KUBLITSKI, | 1:17-cv-298 (NLH/KMW) |
| Plaintiff, | **OPINION** |
| v. | |
| JOHN THOMPSON and UNITED STATES CITIZENSHIP & IMMIGRATION SERVICES, | |
| Defendants. | |

**APPEARANCES**:

THOMAS E. MOSELEY
LAW OFFICE OF TOM MOSELEY
ONE GATEWAY CENTER
SUITE 2600
NEWARK, NJ 07102-5397
    On behalf of Plaintiff

ALLAN B.K. URGENT
OFFICE OF THE UNITED STATES ATTORNEY
970 BROAD STREET
SUITE 700
NEWARK, NJ 07102
    On behalf of Defendants

**HILLMAN**, District Judge

    This matter arises from the denial of Plaintiff Aleh Kublitski's naturalization application. Before the Court is Defendants' Motion for Summary Judgment. For the reasons that follow, the Court will grant summary judgment in favor of Defendants.

**I. Background**

Given that Plaintiff responded to Defendants' Motion for Summary Judgment with a brief letter and a Federal Rule of Civil Procedure 56(d) request for discovery and deferred briefing, the Court has not been provided with a complete set of Statements of Material Facts Not in Dispute. However, in his letter to the Court, Plaintiff included the "procedural history of the case," which largely overlaps with Defendants' Statement of Material Facts Not in Dispute. The Court uses these two documents to address the underlying facts of this case.

Plaintiff was born in Russia in 1970. On April 30, 1999, Plaintiff was admitted to the United States as a visitor. He remained in the United States beyond his authorized stay.

On May 17, 2000, Plaintiff married Barbara Roach, a United States citizen. In September 2000, Plaintiff and Roach filed a Form I-130 (Petition for Alien Relative), a Form I-485 (Application to Register Permanent Resident or Adjust Status), and a Form I-765 (Work Authorization) with the U.S. Immigration and Naturalization Service (INS). On October 17, 2000, the INS sent a rejection notice to Plaintiff and Roach. On November 8, 2000, Plaintiff and Roach re-filed the forms.

The parties differ as to what happened on or around August 7, 2001. According to Plaintiff, "[o]n August 7, 2001, INS issued an internal Form I-181 Memorandum Creation of Record of

2

Lawful Permanent Residence stating that Aleh Kublitski had been granted Lawful Permanent Resident Status pursuant to INA Section 245" and that "the INS Cherry Hill Office mailed an I-485 Approval Notice to Aleh Kublitski that stated: 'Your application for Permanent Residency has been approved' and that he would receive his 'Alien Registration Receipt Card in 270 days.'" According to Defendants, however:

> There is a letter in the administrative record addressed to Kublitski dated August 7, 2001. The document has letterhead indicating that it was prepared by "Examinations, U.S. Immigration & Naturalization Services, 1886 Greentree Road, Cherry Hill, New Jersey 08003." There are entries near the top right of the document for the A File Number and "Adj. Class." There is a blank space next to the words "Approval Date." Underneath the salutation, "Dear Applicant," the letter states, "Your Application for Permanent Residency Has Been Approved." The letter is unsigned.

(citations omitted).

On August 8, 2001, the INS issued a Fingerprint Referral Notice for Plaintiff. On August 22, 2001, the INS sent Plaintiff an Adjustment of Status interview notice for a September 27, 2001 interview. The parties continued to correspond over the coming years.

The following facts, while not explicitly agreed to between the parties, are taken from the Court's review of the documents provided in the administrative record. On September 10, 2004, Plaintiff and Roach were given a Final Judgment of Divorce. Defendants proffer that, sometime in 2004, the Form I-130

3

Petition for Alien Relative was approved. The Court is able to discern a stamp and a signature on the Petition, but the Court is unable to discern any approval date on the document. (A368A). However, as Plaintiff was eventually granted permanent resident status, at some point prior to March 19, 2005, this petition was necessarily approved. On March 19, 2005, the I-495 Application to Adjust Status was stamped "approved," as was a Memorandum of Creation of Record of Lawful Permanent Residence. Plaintiff was issued a Permanent Resident Card, stating that Plaintiff was a resident since March 19, 2005.

An N-400 Application for Naturalization appears to have been signed by Plaintiff on September 23, 2014 and signed by the individual who prepared the form on October 17, 2014. On the N-400 form, Plaintiff stated he became a permanent resident on March 19, 2005.

Plaintiff filed his Complaint with the Court on January 16, 2017. Plaintiff asks for the following relief:

(a) Granting him a hearing <u>de novo</u> before this Court on his naturalization application and declaring that he is entitled to be naturalized, and/or

(b) Ordering the prompt adjudication of his request for reconsideration, and

(c) Granting him costs and attorneys' fees and such other and further relief that this Court may deem proper.

On June 23, 2017, Defendants moved for summary judgment.

Plaintiff responded with a nine-page letter and a Federal Rule of Civil Procedure 56(d) Declaration.

## II. Jurisdiction

This Court has jurisdiction over this matter pursuant to 8 U.S.C. § 1421(c), which provides:

> A person whose application for naturalization under this title is denied, after a hearing before an immigration officer under section 336(a), may seek review of such denial before the United States district court or the district in which such person resides in accordance with chapter 7 of title 5, United States Code. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.[1]

---

[1] The Second Circuit decided in Chan v. Gantner, 464 F.3d 289 (2d Cir. 2006) that "[t]he term 'hearing' has a 'host of meanings' that encompass a wide variety of procedures" and that, "[a]bsent some otherwise expressed [c]ongressional intent, the mere use of the word 'hearing' in a statute does not mandate an evidentiary hearing be held." Id. at 295-96 (first quoting United States v. Fla. E. Coast Ry. Co., 410 U.S. 224, 239 (1973); and then citing J.D. ex. rel. J.D. v. Pawlet Sch. Dist., 224 F.3d 60, 68 (2d Cir. 2000)). Thus, where there are no disputed issues of material fact, the Court is not required to hold an evidentiary hearing. See id. at 296. The Third Circuit has endorsed this decision from the Second Circuit. Assem Abulkhair v. Bush, 413 F. App'x 502, 507 n.4 (3d Cir. 2011) ("The Second Circuit has noted that application of the Federal Rules of Civil Procedure is 'the norm under the current naturalization provision . . . and was the norm under the prior law.' It then determined that the Rule 56 process provides . . . 'the hearing required by section 1421(c).' We agree. Under the circumstances of this case, the district court did not err by failing to hold oral argument before deciding the summary judgment motion." (first alteration in original) (citations omitted) (quoting Chan, 464 F.3d at 295-96)).

5

## III. Standard of Review

By statute, this Court's review of the denial of Plaintiff's application for naturalization is "de novo." 8 U.S.C. § 1421. The Court is required to "make its own findings of fact and conclusions of law." Id. The Federal Rules of Civil Procedure "apply to proceedings for admission to citizenship to the extent that the practice in those proceedings is not specified in federal statutes and has previously conformed to the practice in civil actions." Fed. R. Civ. P. 81(a)(3). Accordingly, the Court turns to its typical summary judgment standard. See, e.g., Moore v. Thompson, No. 09-1747, 2010 WL 398633, at *3 (D.N.J. Jan. 27, 2010).

Summary judgment is appropriate where the Court is satisfied that "'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits if any,' . . . demonstrate the absence of a genuine issue of material fact" and that the moving party is entitled to a judgment as a matter of law. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986) (citing Fed. R. Civ. P. 56).

An issue is "genuine" if it is supported by evidence such that a reasonable jury could return a verdict in the nonmoving party's favor. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). A fact is "material" if, under the governing substantive law, a dispute about the fact might affect the

6

outcome of the suit. Id. "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the non-moving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" Marino v. Indus. Crating Co., 358 F.3d 241, 247 (3d Cir. 2004) (citing Anderson, 477 U.S. at 255).

Initially, the moving party bears the burden of demonstrating the absence of a genuine issue of material fact. Celotex, 477 U.S. at 323 ("[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact."); see Singletary v. Pa. Dep't of Corr., 266 F.3d 186, 192 n.2 (3d Cir. 2001) ("Although the initial burden is on the summary judgment movant to show the absence of a genuine issue of material fact, 'the burden on the moving party may be discharged by "showing" – that is, pointing out to the district court – that there is an absence of evidence to support the nonmoving party's case' when the nonmoving party bears the ultimate burden of proof." (citing Celotex, 477 U.S. at 325)).

Once the moving party has met this burden, the nonmoving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. Celotex, 477 U.S. at 324. A "party opposing summary judgment 'may not rest upon the mere allegations or denials of the . . . pleading[s].'" Saldana v. Kmart Corp., 260 F.3d 228, 232 (3d Cir. 2001). For "the non-moving party[] to prevail, [that party] must 'make a showing sufficient to establish the existence of [every] element essential to that party's case, and on which that party will bear the burden of proof at trial.'" Cooper v. Sniezek, 418 F. App'x 56, 58 (3d Cir. 2011) (citing Celotex, 477 U.S. at 322). Thus, to withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict those offered by the moving party. Anderson, 477 U.S. at 257.

## IV. Rule 56(d) Declaration

Federal Rule of Civil Procedure 56(d) provides:

If a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may:

(1) defer considering the motion or deny it;

(2) allow time to obtain affidavits or declarations or to take discovery; or

(3) Issue any other appropriate order.

"A Rule 56(d) motion is 'the proper recourse of a party

faced with a motion for summary judgment who believes that additional discovery is necessary before he can adequately respond to that motion.'" Superior Offshore Int'l, Inc. v. Bristow Grp., 490 F. App'x 492, 501 (3d Cir. 2012) (quoting Murphy v. Millennium Radio Grp. LLC, 650 F.3d 295, 309 (3d Cir. 2011)). "A properly filed motion must be accompanied by 'a supporting affidavit detailing "what particular information is sought; how, if uncovered, it would preclude summary judgment; and why it has not previously been obtained."'" Id. (quoting Doe v. Abington Friends Sch., 480 F.3d 252, 257 n.3 (3d Cir. 2007)).

This list of factors "is not exhaustive" but serves as "a guide for the district court to follow in exercising its discretion under Rule 56[d]." Id. (alteration in original) (quoting Horvath v. Keystone Health Plan E., Inc., 333 F.3d 450, 458 (3d Cir. 2003)). However, the Third Circuit has said that "where the facts are in possession of the moving party a continuance of a motion for summary judgment for purposes of discovery should be granted almost as a matter of course." Sames v. Gable, 732 F.2d 49, 51 (3d Cir. 1984) (quoting Costlow v. United States, 552 F.2d 560, 564 (3d Cir. 1977)).

Plaintiff requests the production of his "A" file to determine whether there is evidence of the mailing of an approval notice on or around August 7, 2001. Plaintiff also

9

requests production of the "A" file "to permit review of the errors in the handling of the plaintiff's adjustment application including the confusion of his case with that of another applicant and the reason for this confusion that delayed action on the plaintiff's application for permanent residence until after his divorce." Plaintiff also seeks discovery on the "A" file of Said Dahbi, with whom USCIS confused Plaintiff.

Plaintiff further seeks the deposition of USCIS officer Mary Senft and "interrogatories to ascertain the names and current location of those USCIS and/or INS employees who worked on the plaintiff's adjustment application so that their depositions can be taken to ascertain the reasons errors occurred in adjudicating the plaintiff's adjustment application and whether these were undertaken for impermissible reasons."

Plaintiff's Declaration sufficiently articulates the particular information sought. Plaintiff's Declaration does not explain why the information identified has not been previously obtained. Regardless, the Court finds that uncovering this information would not preclude summary judgment, as detailed below.

### V. Summary Judgment Analysis

"An applicant for naturalization has the burden of establishing 'by a preponderance of the evidence that he or she meets all of the requirements for naturalization.'" Assem

10

Abulkhair v. Bush, 413 F. App'x 502, 508 (3d Cir. 2011). "[T]here must be strict compliance with all the congressionally imposed prerequisites to the acquisition of citizenship." Id. (alteration in original) (quoting Fedorenko v. United States, 449 U.S. 490, 506 (1981)).

8 U.S.C. § 1427(a) provides, in pertinent part: "No person . . . shall be naturalized unless such applicant, . . . immediately preceding the date of filing his application for naturalization has resided continuously, after being lawfully admitted for permanent residence, within the United States for at least five years . . . ." (emphasis added). Accordingly, being lawfully admitted as a permanent resident is a prerequisite for naturalization.

As Defendants frame it, the primary issue before this Court is whether Plaintiff's status was adjusted prior to his 2004 divorce from Roach, as Plaintiff contends, or after his 2004 divorce from Roach, as Defendants contend. The Court finds there is not a genuine issue of material fact regarding at what point Plaintiff was adjusted and that further discovery would not change that result.

Plaintiff focuses on a letter dated August 7, 2001, which states "YOUR APPLICATION FOR PERMANENT RESIDENCY HAS BEEN APPROVED." (A0566). The letter, however, is not signed, nor is the approval date filled in. The Court is further provided with

a "Form I-181 Memorandum of Creation of Record of Lawful Permanent Residence," which addresses Plaintiff but is not signed or stamped.

The Court was also provided with a March 19, 2005 stamped "Form I-485 Application to Register Permanent Resident or Adjust Status." (A0125). The Court was further provided with a stamped "approval" as of March 19, 2005 of a "Form I-181 Memorandum of Creation of Record of Lawful Permanent Residence."

Plaintiff's Rule 56(d) Declaration proffers that discovery could reveal that Plaintiff was "mailed an approval notice" around August 7, 2001. The Court finds that, even if the August 7, 2011 letter was mailed to Plaintiff, the March 19, 2005 documents establish that this was the date in which Plaintiff was approved as a lawful permanent resident. There is no indication that the August 7, 2001 documents were legally operative, even if mailed. The Court finds ample evidence that the March 19, 2005 document was operative such that there is not a genuine issue of material fact.[2]

---

[2] The existence of the August 7, 2001 documents is explained in the Declaration of Mary Senft, which describes the process of adjusting an applicant's status to lawful permanent resident. It states, in pertinent part:

> For an applicant to adjust status to lawful permanent resident, part of INS's process included printing out a Form I-181, Creation of Record of Lawful Permanent Residence, in triplicate. . . . Along with the three copies of the Form I-181, three copies of an approval

Aside from the formal execution of the March 19, 2005 documents and the unfinished nature of the August 7, 2011 documents, the parties agree that the process toward Plaintiff obtaining lawful resident status continued after August 7, 2011. More specifically, Plaintiff's fingerprinting and interview took place after that date. These procedural steps are prerequisites for approval as a lawful permanent resident and therefore would have occurred before, and not after, such approval.[3] Accordingly, the Court finds no genuine issue of material fact that Plaintiff was not adjusted on August 7, 2011 but was in fact adjusted on March 19, 2005, after his divorce from Roach.

8 C.F.R. 205.1(a) governs the automatic revocation of "[t]he approval of a petition . . . made under section 204 of the Act." It states, in pertinent part:

---

> notice were also generated and placed in the applicant's file. . . . The approval notices were placed in the file to accommodate the adjudications officers in the event that they approved a case at the interview. The officers could complete the information and disseminate the approval notice at the completion of the interview.

According to Senft, "[t]he letter contained in the administrative file for Aleh Kublitski at page 903 is an approval notice that INS generated before the interview to be completed by the adjudications officer at the interview if the case was approved."

[3] The "Fingerprint Referral Notice" for Plaintiff stated that the fingerprinting was "required in order to continue with the processing of your application for Adjustment of Status." (A0876). Further, the August 22, 2001 interview notice stated the "reason for appointment" was "application for adjustment of status." (A0877).

(3) If any of the following circumstances occur before the beneficiary's or self-petitioner's journey to the United States commences or, if the beneficiary or self-petitioner is an applicant for adjustment of status to that of a permanent resident, before the decision on his or her adjustment application becomes final:

    (i) Immediate relative and family-sponsored petitions, other than Amerasian petitions.

        (D) Upon the legal termination of the marriage when a citizen or lawful permanent resident of the United States has petitioned to accord his or her spouse immediate relative or family-sponsored immigrant classification under section 201(b) or section 203(a)(2) of the Act.

Accordingly, as of the date of Plaintiff and Roach's divorce, Roach's petition was automatically revoked and thus Plaintiff was not eligible to become a lawful resident. "[A]n alien whose status has been adjusted to lawful permanent resident but who is subsequently determined in an immigration proceeding to have originally been ineligible for that status has not been 'lawfully admitted for permanent residence.'" Gallimore v. Attorney Gen. of the U.S., 619 F.3d 216, 224-25 (3d Cir. 2010) (quoting De La Rosa v. DHS, 489 F.3d 551, 554 (2d Cir. 2007)). As Plaintiff was not eligible to become a lawful resident at the time he was approved, this was sufficient grounds to deny his application for naturalization.

14

Finally, the Court addresses Plaintiff's arguments regarding the delay in processing his application and the alleged errors made in the processing of his application. Regardless of the merits of these assertions, the relief Plaintiff seeks from this Court is for the Court to "declar[e] that he is entitled to be naturalized." Even if the Court were to find issue with the way Plaintiff's application was processed and handled, this would not impact the Court's finding above that Plaintiff was correctly denied naturalization.[4]

---

[4] While the Court does not see a claim for equitable estoppel in Plaintiff's Complaint, the Court notes that this claim is also appropriately dismissed on summary judgment. To prevail on an equitable estoppel claim, a plaintiff must establish: "(1) a misrepresentation; (2) upon which he reasonably relied; (3) to his detriment; and (4) affirmative misconduct." Mudric v. Attorney Gen. of the U.S., 469 F.3d 94, 99 (3d Cir. 2006). Notably, "mere delay does not constitute 'affirmative misconduct' on the part of the Government." Id. Regardless, the Third Circuit has held that "where an alien does not meet the statutory requirements for citizenship, a court does not have authority to confer citizenship through equitable means." Abreu-Mejia v. Attorney Gen. of the U.S., 393 F. App'x 918, 921 (3d Cir. 2010); citing INS v. Pangilinan, 486 U.S. 875, 885 (1988)); see also Pangilinan, 486 U.S. at 885 ("Neither by application of the doctrine of estoppel, nor by invocation of equitable powers, nor by any other means does a court have the power to confer citizenship in violation of these limitations.").

This case is similar to Bozilovic v. Holder, No. 15-91, 2016 U.S. Dist. LEXIS 14792 (E.D. Pa. Feb. 5, 2016), and this Court concurs in, and adopts, its reasoning. There, Plaintiff adjusted his status to that of a lawful permanent resident through his marriage to a U.S. citizen. Id. at *1. The adjustment occurred on May 7, 2007. Id. at *3. However, on February 7, 2007, Plaintiff and his wife divorced. Id. at *2-3. His naturalization application was denied because he "was ineligible for permanent residence at the time such status was

## VI. Conclusion

After a de novo review of the administrative record and the submissions of the parties, this Court concludes that the Petition for Alien Relative was revoked by force of statute as a result of his divorce prior to the approval of his adjustment application. The Court further finds that no disputed issue of material fact bars that conclusion on summary judgment nor is it reasonable to conclude that any discovery would alter that result. The Defendant's motion for summary judgment will be granted and an appropriate Order entered.

Date: March 28, 2018      s/ Noel L. Hillman
At Camden, New Jersey     NOEL L. HILLMAN, U.S.D.J.

---

granted." Id. at *3. The Court considered a similar argument as here with regard to delays in the process:

> Plaintiff makes another equity-based argument as to why he is eligible for naturalization. Plaintiff contends that, had there not been a substantial delay on the part of USCIS in adjudicating his adjustment application, he would have received his conditional permanent resident status while he was still married to Ms. Levine, and he would subsequently have received lawful permanent resident status after having informed USCIS that his marriage had dissolved. While I acknowledge that Plaintiff may be eligible for naturalization had this chain of events occurred as described, this argument is, as Government counsel stated at the hearing, a "red herring." See INS v. Pangilinan, 486 U.S. 875, 883-85 (1988) (explaining that courts cannot use equitable doctrines to excuse an alien's failure to meet all of the statutory requirements for naturalization).

Id. at *13 n.8.